UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ELIZABETH A. DESALVO                                                                 PLAINTIFF

V.                         No. 4:22-CV-522-JM-JTR

KILOLO KIJAKAZI, Acting Commissioner
Social Security Administration                                                       DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.     Introduction

On February 1, 2019, Plaintiff Elizabeth A. DeSalvo ("DeSalvo") filed an application for Title II disability insurance benefits. (Tr. at 14). On the same day, she filed a Title XVI application for supplemental security income. In both applications, she alleged disability beginning on December 14, 2018. *Id*. In a written

decision dated July 28, 2021, an administrative law judge ("ALJ") denied the applications. (Tr. at 14–28). The Appeals Council denied DeSalvo's request for review on April 5, 2022. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and DeSalvo has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. The Commissioner's Decision

The ALJ found that DeSalvo had not engaged in substantial gainful activity since the alleged onset date of December 14, 2018.[1] (Tr. at 17). At Step Two, the ALJ determined that DeSalvo has the following severe impairments: total knee arthroscopy of the left knee, degenerative disc disease, obesity, fibromyalgia, bilateral hip bursitis, seizures, headaches, depressive disorder, and anxiety. *Id*.

At Step Three, the ALJ determined that DeSalvo's impairments did not meet or equal a listed impairment.[2] (Tr. at 18–20). Before proceeding to Step Four, the ALJ determined that DeSalvo had the residual functional capacity ("RFC") to

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[2] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

perform work at the light exertional level, with some additional limitations. (Tr. at 21). She should avoid hazards such as dangerous machinery and unprotected heights. *Id*. She can no more than occasionally reach overhead bilaterally. *Id*. She can perform work where the interpersonal contact is incidental to the work performed and she can perform tasks that are learned and performed by rote with few variables and little judgment. *Id*. Finally, the supervision required is simple, direct, and concrete. *Id*.

At Step Four, the ALJ determined that DeSalvo is unable to perform any of her past relevant work. (Tr. at 26). Relying upon testimony from a Vocational Expert ("VE"), the ALJ found, based on DeSalvo's age, education, work experience and RFC, there are jobs in the national economy that DeSalvo can perform, including positions such as housekeeping cleaner, merchandise marker, and collator operator. (Tr. at 27). Therefore, the ALJ concluded that DeSalvo was not disabled. *Id*.

### III.   Discussion

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the

record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. DeSalvo's Arguments on Appeal

DeSalvo asserts that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ failed to fully develop the record; (2) the ALJ erred at Step Two; (3) the ALJ did not properly evaluate DeSalvo's subjective complaints; (4) the RFC did not incorporate all of DeSalvo's limitations; and (5) the ALJ failed to resolve a possible conflict at Step Five.

DeSalvo suffered from multiple impairments, but they were treated

conservatively and she responded well to treatment. Objective imaging showed no more than mild-to-moderate injuries. DeSalvo was able to engage in some daily activities that undermine her assertion that she is fully disabled.

For example, cervical and thoracic MRI in 2018 showed minimal disc height loss and a small central disc protrusion at T7-8, but the scans were otherwise normal. (Tr. at 1024–1026).³ A lumbar MRI taken at the same time was totally normal. (Tr. at 1025). X-rays of DeSalvo's left knee only showed some joint space narrowing. (Tr. at 1104). Right knee x-rays showed osteoarthritis. (Tr. at 1777). CT scans of DeSalvo's head were unremarkable. (Tr. at 1548, 2119, 2148). Clinical examinations of DeSalvo's neck and back in 2018 and 2019 showed some tenderness, but normal range of motion. (Tr. at 876–886, 985, 987). Pain medications and steroid injections relieved her symptoms.⁴ (Tr. at 1731–1734).

After left knee replacement surgery in 2019, DeSalvo returned to normal activities and exhibited no instability or tenderness. (Tr. at 1769–1780). DeSalvo said she was "happy with her surgery." (Tr. at 1771). As for DeSalvo's right knee, she showed some tenderness to palpation, but her gait and station were normal and she was able to heel/toe walk. (Tr. at 1798, 1954).

---

³ Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004).

⁴ Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

5

DeSalvo had headaches and seizures, but she was treated conservatively with medication and nutritional supplements. (Tr. at 1170–1177, 1960). Although she went to the ER for seizures in July 2019, clinical examinations were normal and she was simply referred for a follow-up with her PCP. (Tr. at 1144–1145, 1169–1170, 2104–2106). Moreover, DeSalvo said that seizure medicine helped. (Tr. at 1939–1951).

While DeSalvo asserts that depression and anxiety were disabling, she usually exhibited normal appearance, eye contact, and mood, with normal thought processes, intelligence, and memory. (Tr. at 667, 843–853, 934–945, 1172–1181, 1465–1466, 1865–1870). She only attended therapy for two months during the relevant time-period. (Tr. at 1455–1471, 1865–1870).

For her first argument, DeSalvo urges that because the opinions of Disability Determination Services medical experts issued before the end of the relevant time-period, the ALJ should have ordered further consultative examinations.[5] In the

---

[5] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs). The DDS experts in this case found that DeSalvo could perform simple work at the medium exertional level. (Tr. at 26, 64–85, 90–108). The ALJ considered these opinions in formulating the RFC. *Id.*

absence of such examinations, DeSalvo argues, the record was not fully developed.[6]

Evidence from the entire relevant time-period, including from periods after the DDS review stage, showed no more than moderate clinical findings, with positive response to conservative treatment. And DeSalvo could perform a variety of daily activities, albeit with help.

An ALJ looks at the record *in toto*, and need not rely on any particular medical opinion to support his decision. It is not necessary that he obtain a treating physician's opinion, or even order a consultative examination. *See Buford v. Colvin*, 824 F.3d 793 (8th Cir. 2016) (ALJ properly developed the record and substantial evidence supported the RFC finding even though the record did not contain any treating or examining physicians' opinions). DeSalvo has not shown that further record development was required.

Next, DeSalvo claims that the ALJ should have found shoulder and elbow injuries to be severe impairments at Step Two. The ALJ did address DeSalvo's shoulder pain, and for which she was treated briefly and conservatively. (Tr. at 23–24). DeSalvo failed to present evidence suggesting that she was limited by elbow

---

[6] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830–831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id.*; *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926–7 (8th Cir. 2011).

pain, even moderately so. A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). The ALJ did not err at Step Two.

DeSalvo also argues that the ALJ did not properly evaluate her subjective complaints.[7]

The ALJ discussed medical records, the extent and nature of DeSalvo's pain, her response to treatment, and her ability to perform daily activities.[8] (Tr. at 20–23). In September 2019, her doctor said she had an increased tolerance to activities. (Tr. at 23, 1780). Also in 2019, a separate doctor told DeSalvo to increase exercise. (Tr. at 1108). The ability to perform a variety of daily activities undermines a claim of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Because the ALJ discussed a number of the necessary factors for evaluating subjective complaints, and because DeSalvo's allegations of disabling conditions

---

[7] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

[8] DeSalvo said she could pay bills, go grocery shopping, do dishes and laundry, read, and watch TV. (Tr. at 20–23, 50, 327–331).

were inconsistent with the record as a whole, she has not shown that the ALJ erred.

Additionally, DeSalvo contends that the RFC for light work with additional restrictions outstripped her abilities.[9] As set forth above, clinical findings did not show more than moderate conditions. Treatment was conservative and DeSalvo responded well to that treatment. She could perform daily activities. No doctor placed any permanent restriction on her. The ALJ incorporated DDS opinions into the RFC. The RFC was supported by the record as a whole.

Finally, DeSalvo claims that the ALJ did not resolve a potential conflict at Step Five. The RFC provided for occasional overhead reaching, and the DOT does not specifically address overhead reaching. DeSalvo argues that VE testimony was unsupported because the DOT is silent on overhead reaching.[10]

At the hearing the ALJ asked the VE to identify jobs available based on DeSalvo's age, experience, education, and RFC. (Tr. at 52–57). The VE identified three jobs. The ALJ specifically asked the VE about overhead reaching, and the VE

---

[9] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[10] Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920–21 (8th Cir. 2007); *see* Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

responded in this way: "The DOT does not specifically address overhead reaching. It is my opinion based on my professional experience that the hypothetical individual would not have to keep his or her hands overhead for one-third of the day." (Tr. at 56–57). So the ALJ observed a possible conflict, and the VE explained how the jobs in question could still be performed in spite of the conflict.[11]

Precedent from this Circuit has shown that such a response clears the bar set by *Renfrow*, *supra*. *See Smith v. SSA*, No. 3:19-CV-373-BD, 2020 WL 7588580, at *3 (E.D. Ark. Dec. 22, 2020) (VE response sufficient when he identified the possible conflict between the overhead reaching requirement in the RFC and in the jobs identified and said, based on her experience, the jobs, as actually performed, would not require frequent overhead reaching); *Porter v. Berryhill*, No. 4:17-CV-00072-NKL, 2018 WL 1183400, at *14 (W.D. Mo. Mar. 7, 2018); *Yeley v. Berryhill*, No. 1:17-CV-00078-ACL, 2018 WL 4333617, at *10 (E.D. Mo. Sept. 11, 2018). The ALJ carried his burden at Step Five.

### III. Conclusion

There is substantial evidence to support the Commissioner's decision that DeSalvo was not disabled. The record was fully developed, and the ALJ did not err at Step Two or Step Five. Furthermore, he properly evaluated subjective complaints and the RFC incorporated all of DeSalvo's credible limitations.

---

[11] The ALJ also addressed how he resolved the conflict in his written decision. (Tr. at 27).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 26th day of April, 2023.

_____
UNITED STATES MAGISTRATE JUDGE